IN THE SUPREME COURT OF PUERTO RICO

Janet Santana et als

    Plaintiffs

       v.

Governor Sila María
Calderón et als

    Defendants

No. CT-2004-2

[date stamp]

*CV-01-1576(JP)*

Dissenting Opinion by Associate Justice Mister Rivera-Pérez.

[initials on the left margin of every page]

San Juan, Puerto Rico, on June 17, 2005.

The Majority concluded that the Executive Director of the Occupational Development and Human Resources Council, by having administrative and operational functions, formulates and implements public policy in an area that is sensitive to for country's economic development. They further conclude that for that reason the fixed term of four (4) years provided for in Article 5 of Public Law 97 of December 18, 1991, as amended by Public Law 166 of July 23, 1998 to fill that position is in violation of the appointments clause of the

CT-2004-002                                                        2

Constitution of the Commonwealth of Puerto Rico. We dissent from such course of action. We support our dissent from the decision and opinion from this Court in the case of Arturo Guzmán Vargas v. Hon. Sila M. Calderón, et als.[1]

I

This matter comes from the United States District Court for the District of Puerto Rico by means of an inter-jurisdictional certification procedure presented on September 2, 2004. Said forum certified the following question to our Court: Did the Governor of Puerto Rico, under the Constitution of Puerto Rico, have the authority on March 7, 2001 to remove Mrs. Janet Santana from the position of Executive Director of the Occupational Development and Human Resources Council?"[2]

II

Back on March 7, 2001, when the events took place that give rise to the certification question submitted to us, the statutory state of law in effect is crucial. Articles 5 and 6 of Public Law No. 97 of December 18, 1991, as amended, read as follows:

---

[1] Resolved on March 23, 2005, 2005 T.S.P.R. 33, 2005 J.T.S. 38, ___ D.P.R. ___ (2005).
[2] The original text in the English language of the question certified reads as follows: "Does the Governor of Puerto Rico have the authority under the Constitution of Puerto Rico to remove the Executive Director of the HRODC?"

CT-2004-002                                            3

Article 5.- Creation, composition, requirement and term of the Council members

The Occupational Development and Human Resources Council was created to be the governing and standardizing body of the System. **The Council shall retain the functions of advising, coordinating, establishing public policy and shall be a regulatory and oversight entity for the occupational development and human resources system.** Such entity falls under the Department of Labor and Human Resources as an operational component. The Secretary of Labor and Human Resources shall evaluate and approve administrative promotions, the internal organization, the programmatic priorities, and the coordination between the Council and the rest of the operational components of the Labor and Human Resources Department. **The Council shall be composed by the Secretary of Education, the Secretary of the Department of the Family, the Secretary of the Department of Economic Development and Commerce, the Secretary of Labor and Human Resources, who shall preside over it, three (3) representatives from the private sector and three (3) representatives from the public interest.** It is further provided that one of the Council members shall be a youngster whose age is not to exceed 29 years of age and who has stood out in the technological-occupational field. Members of the private sector shall represent, among others, the industrial, commercial, banking, agricultural, and services sectors, and as part of their functions with the Council, together with the members of the public interest, shall make sure that the System responds properly to the technological-occupational training and education needs of Puerto Ricans. **Members of the private sector and representatives from the public sector shall be appointed by the Governor with the advise and consent of the Puerto Rico Senate. The Governor shall appoint, with the advise and consent of the Senate, an Executive Director for a term of four (4) years and until a successor is appointed and takes over the**

**position, who shall direct the Council's administrative and operational work.** The Governor shall affix the Executive Director's salary. All operational functions and powers that may have been transferred to the Council

CT-2004-002                                                    4

are returned to the Department of Education, the Department of Labor and Human Resources, and to the Right to Work Administration.

The Learning Council of the Department of Labor and Human Resources shall continue to be in effect.

No person having a direct economic interest in educational institutions may be member of the Council. Members from the private sector and the public interest member shall be appointed for a term of five (5) years each and shall fill their positions until the expiration date for each of their respective appointments or until their successors are appointed and fill the position. Initial appointments to the Council shall be under the following terms: one for three (3) years, one for four (4) years, and two (2), including the President, for five (5) years.

All vacancies that take place within the Council before the appointment term for a member has expired shall be filled in the same form and manner in which said member was appointed and for the remainder of the unexpired term for the member causing said vacancy...[3] (Emphasis added.)

Article 6 Council – Functions and Powers

**The Council shall be the governing and standardizing body within the System.** It shall be

---

[3] 18 L.P.R.A. sec. 1584. Public Law No. 168 of July 26, 2003 amended the first paragraph of Article 5 cited above, eliminating the fixed term of four (4) years for the appointment of the Executive Director, and establishing that said position would be one without a specified term of office, subject to the Governor's free designation and removal.

empowered with the following functions and
authorities, without these being understood to be
a limitation.

**(a) Implement and enforce compliance with the
public policy established in this legislation and
any other that in the future may be established
in relation to technical-occupational education
and the purposes of this chapter.**

**(b) Establish the specific objectives that are to
re-orient the System in the short- and long-term,
in accordance with the public policy established
and**

CT-2004-002                                                          5

**the general objectives of the System as provided
for in this chapter.**

(c) Evaluate and approve the Five-Year Strategic
Plan prepared by the President of the Council.

(d) Determine the general orientation of the
technical-occupational education programs offered
by the agencies, operational units or programs
comprising the System, independently of the
provisions contained in any other law, taking
into account the peculiarities or particularities
of the programs.

(e) Establish the minimum competency levels that
System students must have to be able to obtain
their certificates, diplomas or degrees. These
competency levels must be consistent with the
occupational profiles needed and required by the
private and public sectors.

(f) Approve the academic and professional
programs and offers within the System components
and to award the competency titles and
credentials granted by the System in those
programs that have been duly approved and to
periodically revise the specialties or
professions to be offered to each System

component, taking in account the supply and demand.

(g) Establish the standards for the consolidation of two or more technological or occupational programs within the system.

(h) Establish rules for the validation and transfer of students from one System program to another, and the simultaneous participation in more than one program within the System.

(i) Structure the Council's administrative organization.

(j) Outline existing occupational programs for which the System organization may be established, including the power to create, eliminate, transfer, separate or consolidate any of the programs that are part of the System and approve the creation of new programs, schools and colleges for technical-

CT-2004-002                                                         6

occupational training.

(k) Receive and comprehensively evaluate budgetary petitions from the various System components submitted by the President and submit to the Governor, through the Management and Budget Office, the budgetary petition for the System.

(l) Evaluate and approve, subject to the limitations and procedures required by federal laws, the federal funding requests for the various System components.

(m) Periodically evaluate and audit the educational programs and services offered by the System in order to ascertain their effectiveness in the achievement of the established objectives.

(n) Establish, jointly with the Department of Education, the University of Puerto Rico, the Council for Higher Education, the General Educational Council, the private educational centers, and the agencies providing support services, as appropriate, the collaboration and coordination mechanisms to facilitate the comprehensive training of the participant and possible validation and accreditation of courses and titles between these and the System.

(o) Establish coordination with the Examining Boards that regulate some occupations, such that this process may be harmonized with the System's offerings.

(p) Coordinate with the business sector in order to achieve greater participation of this sector in the development of the proposed objectives, including the cooperation in matters of research and development; promote agreements with the companies in order to establish programs and courses in occupational education offered by the System within these companies, and accredit the work experience in educational terms.

(q) Establish the conditions that drive the conversion of each work center in the country into an occupational training center.

CT-2004-002                                            7

(r) Restructure curriculum offerings in vocational schools in accordance with the changes in supply and demand within the labor world.

(s) Endow the public technical-occupational training centers with appropriate physical facilities and equipment, and modern shops that facilitate the development of skills in keeping with the competitive demands of a global economy.

(t) Approve the necessary regulations to achieve the purposes of this chapter and perform any

other function or authority inherent thereto.

(u) Submit periodic reports to the Governor and
to the Legislative Assembly regarding the
achievement of the objectives and purposes under
this chapter.

(v) Carry out and perform the functions required
under Section 111 of the federal Carl D. Perkins
Vocational and Applied Technology Education Act.
The Council shall determine which of these
functions it will delegate in accordance [with]
the provisions of said federal law.

(w) Be the depository and manage the funds
received by Puerto Rico pursuant to the federal
Carl D. Perkins Vocational and Applied Technology
Education Act, as well as supervise its use and
make the disbursements against said funds in the
manner provided for in the aforementioned law,
and for the purposes specified therein.[4] (Emphasis
added.)

The advisory functions, coordination, establishment,

implementation, enforcement of compliance with the public

policy, and those of a regulatory and oversight entity for

the occupational and human resources development system, at

the time of these events resided with the Occupational

Development and Human Resources Council, hereinafter the

council. The

---

[4] Id, sec. 1585.

CT-2004-002                                                          8

Council's Executive Director was appointed, at the time of the events, by the Governor of Puerto Rico, with the advise and consent of the Senate, for a fixed term of four (4) years, to direct **"the administrative and operational work of the Council"**. That is to say, its work consisted in administering the Council's offices and facilitating and allowing for the operation of its functions pursuant to the statute.

Then-Governor of Puerto Rico, Sila María Calderón-Serra, removed Mrs. Janet Santana from her position as Executive Director of the Council on March 7, 2001, through a letter. Said letter reads as follows:

Dear Mrs. Santana:

You are the Executive Director of the Occupational Development and Human Resources Council ("ODHRC"). As such, you participate in the operation and direction of occupational and human resources development for the Commonwealth of Puerto Rico which involves, among other things, the implementation of programs to develop investments in Puerto Rico's labor force. Your duties, therefore, are purely of an executive nature.

According to Article 5 of Public law No. 166 of July 23, 1998, ODHRC "falls under the Department of Labor and Human Resources as an operational component. The Secretary of Labor shall supervise, evaluate and approve the administrative promotions, the internal organization, the programmatic priorities, and the coordination between the Council and the

other operational components of the Department of
Labor and Human Resources."

    On January 5, 2001 the Secretary of Labor, the
Hon. Víctor Rivera-Hernández, asked you in writing
to refrain from processing all fiscal transactions
that in any way committed or obligated the

CT-2004-002                                          9

ODHRC funds. The Secretary told you that such ban
included   the   appointment   or   recruitment   of
personnel, the purchase of materials or equipment,
awarding contracts of any nature and any other
action that in any way involved the disbursement of
ODHRC funds, except for the payment of payrolls and
contractual   obligations   previously   acquired.
Furthermore, you were advised that all fiscal
transactions carried out in violation of these
directives would be null and void. This directive
was for immediate compliance.

    This communication is consistent with the
public policy instituted during my administration
to demand a clean and transparent government. To
that effect we have issued several administrative
directives and executive orders intended to ensure
the best management of public funds, and the best
public administration. Among those is Executive
Order OE-2001-03. This order is evidently
applicable to the ODHRC.

    I have come to learn that you have engaged in
some actions that denote insubordination and
noncompliance with the Executive Order OE-2001-03
and the orders and directives of the Labor
Secretary, Hon. Víctor Rivera-Hernández, as is your
duty by law. The following are included among the
findings of noncompliance and insubordination: (1)
you made 3 appointments without my authorization,
the Chief of Staff's, or the Labor Secretary's; (2)
you took a trip to California on official business
without notice to and approval from the Labor
Secretary; (3) you made an announcement to the

Council staff about a reorganization in the career position Classification Plan without the consent of the Labor Secretary; (4) you authorized five purchase orders for equipment between January 22 and February 9, 2001; and (5) you caused the return of $1,476,070.81 in federal funds under Title III and this turned out to be an incorrect decision since those funds were necessary for matters related to the closing down of companies.

CT-2004-002                                                    10

For the reasons stated above, you are removed from your position as Executive Director of the Occupational Development and Human Resources Council, effective upon receipt of this letter.

Sincerely,

Sila M. Calderón[5]

During the month of May 2001 Mrs. Santana and her husband filed a complaint in the United States District Court for the District of Puerto Rico under the U.S. Civil Rights Act, 42 U.S.C. sec. 1983. In said complaint they sought an injunction remedy plus compensatory and punitive damages. The then-Governor of Puerto Rico, the Labor Secretary, the Council Director and the Region II Representative of the U.S. Department of Labor were sued. In view of the claim pending before this federal trial court for a violation of a federal constitutional right to

---

[5] Appendix 1 to the Petition for Certification Writ, pages 1-2.

due process, in its procedural aspect, and in light of the issues raised by Mrs. Santana, brought to this forum, to the effect that she has and had a proprietary interest or right in the position of Council Executive Director for the fixed term of four (4) years, as provided by law, that forum had to determine if the Governor of Puerto Rico at the time had the power under the Puerto Rico Constitution to remove Mrs. Santana from that position. The

CT-2004-002                                                    11

federal forum certified the question to us at a time when this Court had not resolved it. At this time, the matter has been scheduled by the Court for March 23, 2005 in the case of Arturo Guzmán Vargas v. Hon. Sila María Calderón Serra, *supra*. Let us see.

On the subject of the scope of the Governor of Puerto Rico's power to remove public functionaries from their positions, as well as the power of the Legislative Assembly of Puerto Rico to impose restrictions on such power, we stated in Arturo Guzmán Vargas v. Hon. Sila María Calderón Serra, *supra*, that the Puerto Rico Constitutional Assembly incorporated into our Constitution similar criteria to those adopted by the federal jurisdiction as to the scope

of the Legislative Branch to intervene, as it happens in the case at bar, with the powers delegated by the Constitution of Puerto Rico to the Executive Branch. In that opinion we stated:

> ...Art II. Sec. 1, 2 and 3 of the United States Constitution grants the President the power to appoint, with the advise and consent of the Senate, ambassadors, ministers, public consuls, judges of the Supreme Court, and all those United States functionaries whose positions are established by law, and whose appointments are not prescribed by said Constitution. All of these have an obligation to assist him with his main function of ensuring compliance with the laws.[6] However, and similar to the way

CT-2004-002                                                              12

> in which it happens with our Constitution, Art. II of the United States Constitution does not expressly establish the power, if any, that the President may have to remove functionaries appointed by him. Impeachment, the only way to remove public functionaries provided by the aforementioned Constitution, is only applicable to the President, the Vice President, and all

> **Section 1.**
>
> The executive Power shall be vested in a President of the United States of America.
>
> **Section 2.**
>
> He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; **and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors,**

---

[6] In its pertinent portions, Art. II, section 1, 2 and 3 of the United States Constitution, establishes that:

Certified Translation
Janis Palma, USCCI

**other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments**. (Emphasis added.)

**Section 3**

He shall from time to time give to the Congress Information on the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient; he may, on extraordinary Occasions, convene both Houses, or either of them, and in Case of Disagreement between them, with Respect to the Time of Adjournment, he may adjourn them to such Time as he shall think proper; he shall receive Ambassadors and other public Ministers; **he shall take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States**. (Emphasis added.)

CT-2004-002                                          13

civilian functionaries of the United States.[7] Thus, the Supreme Court of the United States has been the one to address this void in the law jurisprudentially, with the case of <u>Myers v. United States</u>, 227 U.S. 52 (1926), one of the first decisions dealing with this complex matter. See: Lawrence H. Tribe, *American Constitutional Law*, Ed. Foundation Press, 2000, page 703-717.

In <u>Myers v. United States</u>, *supra*, the Court ruled that Congress could not deprive the President of the United States of his power to

---

[7] Regarding the impeachment process, Art. II, Sec. 4 of the United States Constitution establishes that: The President, Vice President and all Civil Officers of the United States, shall be removed from Office on Impeachment for and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors.

Certified Translation
Janis Palma, USCCI

remove a functionary from the Executive Branch.[8] The removal power, as the Court ruled, is immersed in the power to appoint granted by the Constitution of the United States to the President. By virtue of that, he had the exclusive and absolute authority to sever functionaries appointed by him independently of the fact, as in the case at bar, that the law provided for a fixed term to hold such position, or established the causes for removal of such functionaries. This broad power, in the Court's judgment, concretized the President of the nation's responsibility to ensure

---

CT-2004-002                                              14

compliance with all laws; a duty that, as we mentioned, is imposed by Art. II, Sec. 3, of the United States Constitution.

Approximately one decade later, in Humphrey's Executor v. United States, 295 U.S. 602 (1935)[9], the standard established in Myers v. United States, *supra*, was substantially limited. **This time the interpretation was that the President's power to remove functionaries appointed by him could be restricted when the functionaries were vested with quasi-legislative and/or quasi-judicial powers.** In the Court's judgment, this type of functionary requires a certain degree of independence from the Executive Branch in order to carry out efficiently the tasks entrusted to him or her. In the pertinent portions, the Court pointed out:

---

[8] In this case the President of the United States fired a Postmaster before the four-year term for which he had been appointed had expired. The law that created the position set forth that postmasters could only be removed by the President of the United States with the advise and consent of the Senate. This last requirement was declared null.

[9] In this case the President of the United States removed a member of the Federal trade Commission, a commission vested with quasi-legislative and quasi-judicial powers, alleging the need to have the Commission composed by persons of his trust. Congress had provided in the Commission's enabling law that its members would be appointed for a term and could only be removed for inefficiency, negligence, or unlawfulness in their management of the office.

We think it plain under the Constitution that illimitable power of removal is not possessed by the President in respect to of officers of the character of those just names. **The authority of Congress, in creative [sic] quasi legislative or quasi judicial agencies, to require them to act in discharge of their duties independently of executive control cannot well be doubted; and that authority includes, as an appropriate incident, power to fix the period during which they shall continue, and to forbid their removal except for cause in the meantime.** For it is quite evident that one who holds his office only during the pleasure of another

---

CT-2004-002                                                              15

cannot depended [sic] upon to maintain an attitude of independence against the latter's will. 295 U.S. on page 629. (Emphasis added.)

The doctrine formulated under Humphrey's Executor v. United States, as discussed above, was sustained, years later, in Wiener v. United States, 357 U.S. 349 (1958).[10] The Court summarized as follows what would constitute the guiding criterion in this type of cases:

> **Thus, the most reliable factor for drawing an inference regarding the President's power of removal in our case is the nature of the function that Congress vested in the War Claims Commission.** What were the duties that Congress confined to this Commission? And can the inference fairly be drawn from the failure of Congress to provide

---

[10] In this case the President of the United States, in an attempt to recruit personnel of his absolute trust, removed a member of the War Commission. Said commission was created to adjudicate petitions for compensation submitted by individuals or organizations that suffered damages during World War II. The Commission's enabling law established that the term of incumbency of the commissioners would end when their task concluded. However, nothing was provided for the removal of its members.

Certified Translation
Janis Palma, USCCI

for removal that these Commissioners were to remain in office at will of the President? Id on page 357 U.S. on pages 353-354 (Emphasis added.)

The scope of the President's removal power was considered again by the Supreme Court of the United States in <u>Morrison v. Olson</u>, 487 U.S. 654 (1988).[11]

CT-2004-002                                                16

Similar to what was resolved in <u>Humphrey's Executor v. United States</u>, *supra*, and the sequel of cases that cite it, said forum pointed out that the analysis made by the courts at the time they decided if the President has the power to remove a functionary appointed by him cannot be limited to the type of function performed by the functionary, that is to say, purely executive, quasi-legislative, or quasi-judicial. **Although such an analysis is in and of itself essential at the time a decision is made as to whether the President has or does not have the power to remove the functionary in question, it is indispensable, additionally, to evaluate the manner in which the restrictions imposed have a bearing on his power to comply with and enforce compliance with the law.** Thus, it is indispensable to evaluate the degree of independence the functionary in question requires in relation to the Executive Branch in order to carry out efficiently the tasks delegated to him or her. Said forum said, in their pertinent portions:

We undoubtedly did rely on terms "quasi-legislative" and "quasi-judicial" to distinguish the officials involved in *Humphrey's Executor* and *Wiener* from those in *Myers*, but our present considered view is that the

---

[11] In this case, the limitation imposed by a statute on the President's power of removal, granting said power to the federal Secretary of Justice, was questioned.

determination of whether the Constitution allows Congress to impose a "good-cause" type restriction on the President's power to remove an official cannot be made to turn n whether or not that official is classified as "purely executive". **The analysis contained in our removal cases is designed not to define rigid categories of those officials who may or may not be removed at will by the President, but to ensure that Congress does not interfere with the President's exercise of the "executive power" and his constitutionally appointed duty to "take care that the laws be faithfully executed" under Article II...**

CT-2004-002                                                              17

[. . .]

**[B]ut the real question is whether the removal restrictions are of such a nature that they would impede the President's ability to perform his constitutional duty and the functions of the officials in question must be analyzed in that light.** 487 U.S. on pages 689-691. (Emphasis added.)

B.

By virtue of the above and consistent with the mandate given to us by the members of the Constitutional Assembly at the time they were debating the scope of the Governor's power of removal, to adopt the interpretation given to the matter in the federal jurisdiction, we must conclude as a point of departure for our analysis that any decision related to the constitutionality of a statutory limitation on the appointment and/or

Certified Translation
Janis Palma, USCCI

removal powers of the Governor requires a case-by-case analysis in which it is indispensable to identify whether or not the functionary carries out "purely executive", quasi-legislative or quasi-judicial functions,. In the case of a functionary with "purely executive" functions, the Legislative Branch's authority to impose requirements to remove said functionary is minimal because, in most cases, these are functionaries who collaborate directly with the implementation of public policy and the execution of those functions assigned by the Constitution to the Executive Branch.

**The main criterion to determine the validity of the statute is that the legislative limitation on the Governor of Puerto Rico's power of removal does not interfere impermissibly or unreasonably with his or her constitutional power to comply with and enforce compliance with the laws and to formulate and implement public policy. An examination of the statute demands that the legislative limitation to said power does not impermissibly limit the powers of the**

CT-2004-002                                                 18

**Executive Branch or affect the balance that must exist between the branches of government.**

This is different from the case of those functionaries who perform quasi-legislative and quasi-judicial tasks. The Legislative Assembly can guarantee a degree of greater independence on this type of functionary that enables him or her to perform his or her duties free of any interference from other

> government branches. Therefore, in this case, any reasonable restriction on the Governor's removal power would be valid, of course, unless it bears on the Governor's power to comply with his or her constitutional powers.[12] (Emphasis added.)

On the matter before us for our consideration regarding some sort of legislative limitation on the Governor's removal power, it is precisely in light of that judicial standard that we must address the controversy at bar. The Executive Director of the Occupational Development and Human Resources Council performs and executive function reduced to direct **"the administrative and operational work of the Council" for a fixed term of four (4) years provided for by law.** The main criterion to determine the validity of this statute consists of such a limitation on the Governor's power of removal **not interfering in an impermissible and unreasonable manner with her constitutional power to comply with and enforce compliance with the laws and formulating and implementing the government's public policy in the area of economic development for the country.**

---

[12] <u>Arturo Guzmán Vargas v. Hon. Sila María Calderón, et als</u>, *supra*, pp. 14-22.

CT-2004-002                                          19

The Governor of Puerto Rico has the power and, at the same time, the duty and obligation, pursuant to Article IV, Section 4 of the Puerto Rico Constitution, *supra*, of **complying with and implementing the laws in effect** and of **complying with and implementing them** through all those functionaries under her "**supervision and inspection**" authority. In order to discharge this role of a constitutional nature, the Governor of Puerto Rico has **absolute and unrestricted power** over certain and given "**executive functionaries**" whose functions are "**purely executive**" **and are directly linked to the discharge of her constitutional role.** If she did not have plenary power over those functionaries in the exercise of her "**power of appointment and removal**" she would not be able to formulate the Executive branch's public policy, pursuant to the People's democratic mandate. Such functionaries are essential and fundamentally members of the Governor or Puerto Rico's cabinet, and her body of advisors and aids. The Executive Branch's public policy is formulated and implemented through these functionaries and, when necessary, approval thereof is initiated through administration bills of law, statutes adjusted to the

government program of the political party in power. Once that legislation is approved and in effect, the Cabinet members are fundamentally called upon to **comply with and implement it** in representation of the

CT-2004-002                                                         20

Governor of Puerto Rico. Nevertheless, should certain and given statutes remain in effect because they are not repealed or amended by the new administration, the Governor of Puerto Rico has the power and, at the same time, the duty and obligation to comply with them and to implement them, doing so through the functionaries under her **"supervision and inspection"**. There are functionaries that, although assigned to the Executive branch, and are under the **"supervision and inspection"** power of the Governor of Puerto Rico, the functions they carry out are not essential and fundamental for the latter to perform his or her constitutional role. The Governor's **"power of removal"** over these functionaries is not absolute and may be restricted and limited by the Puerto Rico Legislative Assembly, without undermining the **"supervision and inspection"** power of a constitutional nature that the Chief Executive has over them. There are functionaries that, although their

Certified Translation
Janis Palma, USCCI

functions are executive are nor essential or fundamental for the Governor of Puerto Rico to discharge and perform his or her constitutional role. The Legislative Assembly may grant these functionaries independence from the Executive Branch and autonomy for the discharge and performance of their functions, as long as

CT-2004-002                                                21

the Governor of Puerto Rico's authority to **"supervise and inspect"** them is preserved.[13]

The analysis that governs the instant issue is not framed within the rigid definition of executive functionaries under the **"supervision and inspection"** power of the Governor of Puerto Rico. It falls under **the judicial evaluation and determination as to whether the Legislative Branch has intervened in an impermissible and unreasonable manner with the exercise of the "executive power" that the Governor of Puerto Rico has, and his or her constitutional authority and duty to appoint and remove within the scope of his or her constitutional mandate to enforce and implement the law, pursuant to Article IV. Section 4 of the**

---

[13] See Concurrent Opinion issued by Associate Justice Mister Rivera-Pérez joined by Associate Justices Rebollo-López and Corrada-del-Río in <u>Arturo Guzmán Vargas v. Hon. Sila María Calderón, et al</u>, *supra*, pp. 85-87.

C:\Documents and Settings\administrator\Desktop\Santana_v_Calderon[3].doc; Created by Janis Palma; Created on 12/12/2005 2:59:00 PM; Last printed 12/14/2005 10:04:00 AM

Constitution of Puerto Rico.[14] The central issue before us is whether the fixed term of four (4) years provided for by law for the Council's executive Director to direct "the administrative and operational work of the Council" is of such nature as to prevent her from discharging or performing such constitutional role.

We concluded, upon evaluating the clause contained in Article 5 of Public Law number 97, as amended, comprehensively

CT-2004-002                                                  22

and as a whole with the other parts of that law, effective March 7, 2001, that the limitation contained therein on the Governor of Puerto Rico's power of removal over the Council's Executive Director **did not in an impermissible and unreasonable way prevent her from exercising her "executive power" and performing her constitutional role.** The functions of the Council's Executive Director of directing **"the administrative and operational work of the Council" did not prevent in an impermissible and unreasonable manner the performance of the constitutional role of the Governor of Puerto Rico to comply with and**

---

[14] Article IV. Sec. 4, Commonwealth Const., L.P.R.A., Vol. I, 1999 ed., page 385.

**implement the laws.** Although said functionary is under the power of **"supervision and inspection"** of the Governor of Puerto Rico, at the time of the events she did not have any leading function whatsoever in those areas and powers assigned to the Occupational Development and Human Resources Council, to formulate and implement public policy. The function of the Council's Executive Director as of March 7, 2001 was to direct the administrative aspect of the Council's office and to facilitate and allow that body to carry out its functions and authority pursuant to the statute. We fail to understand why it was necessary and critical for the then-Governor of Puerto Rico to remove Mrs. Janet Santana, **because it prevented her in an impermissible and unreasonable manner from discharging her constitutional role of enforcing and implementing the laws.** On the contrary, said statute allowed her to make sure,

CT-2004-002                                                                 23

through her power of **"supervision and inspection"** that the Council's Executive Director fully complied with the legislative mandate given to direct **"the administrative and operational work of the Council"**. Under Article 5 of Public Law 97, *supra*, in effect March 7, 2001, the Governor of

Puerto Rico retained the power of appointment, and removal, of course the latter through the constitutional guarantee to due process, which provided her with a substantial capacity and ability to make sure that the functions assigned by statute to the Council's Executive Director were complied with and implemented fully. Under said statute, the Governor of Puerto Rico retained the authority to remove the Council's Executive Director when, far from complying with the law, she used her position to further other ends and, therefore, failed to comply with her duties and obligations.

We do not see in this case an attempt by the Puerto Rico Legislative Assembly to increase its powers at the expense of the Executive Branch. This case does not pose an usurpation of the Executive Branch's functions by the Legislative Branch. The Legislative Branch did not retain for itself the power to **"supervise and inspect"** the Council's Executive Director. **We conclude that Article 5 of Public Law 97, *supra*, did not prevent in an impermissible and unreasonable manner the exercise of the aforementioned powers of the**

Certified Translation
Janis Palma, USCCI

CT-2004-002                                            24

**Executive Branch, nor did it affect the balance that must exist between these two branches of government.**

The question before us, certified by the federal judicial forum, requires a direct answer in the affirmative or the negative strictly on the matter of the local constitutional law certified. The issue as to whether or not the position of Council Executive Director is invested with a proprietary interest or right subject to the federal constitutional guarantee to due process, in its procedural aspect, is one eminently for the federal jurisdiction and it is not within this Court's purview to adjudge.

The mention by the Majority in their Opinion that Mrs. Janet Santana was not a career employee pursuant to the "Puerto Rico Public Service Personnel Act"[15], reason for which she did not enjoy the protection that said law affords those types of employees, is unnecessary and irrelevant to the matter before us, certified by the federal forum. Therefore, we differ and dissent, out of deference to said forum on such a course of action.

---

[15] 3 L.P.R.A., sec. 1301 et seq.

C:\Documents and Settings\administrator\Desktop\Santana_v_Calderon[3].doc; Created by Janis Palma; Created on 12/12/2005 2:59:00 PM; Last printed 12/14/2005 10:04:00 AM

III

On the grounds stated above, we dissent from the Majority's actions and opinion. We would decree the

CT-2004-002                                          25

constitutional validity of Article 5 of Public Law 97, as amended.

[signature]

EFRAIN E. RIVERA-PEREZ
Associate Justice

**CERTIFICATION BY TRANSLATOR**

I, JANIS PALMA, an English-Spanish interpreter and translator certified to that effect by the Administrative Office of the United States Courts and the National Association of Judiciary Interpreters and Translators (NAJIT), do hereby certify that I have translated the foregoing document and it is a true and accurate translation to the best of my knowledge and abilities.

_____          12/14/2005
Janis Palma, USCCI                        Date