IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JANET SANTANA, et al.,

        Plaintiffs

           v.

SILA MARÍA CALDERÓN, et al.,

        Defendants

CIVIL NO. 01-1576 (JP)

## OPINION AND ORDER

Before the Court is an Opinion issued by the Supreme Court of Puerto Rico (No. 123) in response to the following question certified by this Court: "Does the Governor of Puerto Rico have the authority under the Constitution of Puerto Rico to remove the Executive Director of the Human Resources and Occupational Development Council?" In light of the Supreme Court of Puerto Rico's affirmative answer to the certified question, and in accordance with guidance provide by the United States Court of Appeals for the First Circuit, the Court will now revisit certain issues previously addressed in its prior Opinion and Order (No. 64).

Specifically, for the reasons explained herein, the Court shall dismiss Plaintiffs' claims brought pursuant to the First and Fourteenth Amendments to the United States Constitution, alleging political discrimination and deprivation of a property right without procedural due process by Defendants Sila M. Calderón ("Calderón") and Víctor Rivera ("Rivera"), in their official capacities as

CIVIL NO. 01-1576 (JP)          -2-

Governor of Puerto Rico and Secretary of Labor and Human Resources of Puerto Rico, respectively.  In addition, the Court will dismiss Plaintiffs' claims alleging a conspiracy pursuant to 42 U.S.C. § 1983 ("Section 1983"), and alleging deprivation of a liberty interest without due process, as against all Defendants.

Also before the Court is a motion to dismiss (**No. 108**) filed by Defendant Ralph Muñiz ("Muñiz").  The Court **GRANTS** Defendant Muñiz's motion, and shall dismiss the claims against Defendant Muñiz for violations of the First and Fifth Amendments to the United States Constitution.[1]

The claims that shall remain before the Court are Plaintiff's claim under the Consolidated Omnibus Reconciliation Act (COBRA), as well as Plaintiffs' claims brought pursuant to Puerto Rico law.

I.    **FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

Plaintiff Janet Santana ("Santana"),[2] her husband Esteban Pérez, and the Conjugal Partnership Pérez-Santana, filed the instant lawsuit alleging, *inter alia*, that Santana suffered political discrimination when she was removed from her position as Executive Director of the Human Resources and Occupational Development Council ("HRODC").

---

1.    The Court notes that in granting Defendant Muñiz's motion to dismiss, we dismiss only the constitutional claims, and the conspiracy claims against him. Muñiz's motion to dismiss  does not present arguments for dismissal of either the Consolidated Omnibus Reconciliation Act (COBRA) claim, or the claims brought pursuant to Puerto Rico law.  These claims remain before the Court as to Muñiz and the other Defendants.

2.    Because the facts giving rise to the claims in this case are related to Santana's employment, we also refer to her as "Plaintiff." The claims brought by her husband, Esteban Pérez, are derivative of Santana's claims and do not involve any independent factual basis.

CIVIL NO. 01-1576 (JP)          -3-

     In July 2000, Governor Pedro Roselló appointed Plaintiff Santana
to the position of Executive Director of the HRODC, for a four year
term which was to expire in July 2004.   The HRODC is an agency
attached to the Department of Labor and Human Resources of the
Commonwealth of Puerto Rico.   Created pursuant to P.R. Laws Ann.
tit. 18, section 1584, the HRODC is the governing body that oversees
a group of agencies and programs related to non-university
technological-occupational education.   P.R. Laws Ann. tit. 18,
§ 1584.  The HRODC  is responsible for "advising, coordinating, and
the setting forth of public policy, and shall be the regulating and
supervising entity of the occupational development and human
resources system."[3]  Id.  Pursuant to an executive order issued by
the Governor of Puerto Rico, the HRODC was assigned to act as the
depository and administrator of federal funds that Puerto Rico
received under the federal Workforce Investment Act ("WIA"),
29 U.S.C. §§ 2801 *et seq*.

     In January 2001, Defendant Calderón took office as Governor of
the Commonwealth of Puerto Rico.  Calderón appointed Defendant Rivera
as Secretary of Labor and Human Resources.  Calderón also appointed
Defendant González as Auxiliary Secretary of Planning and Special
Assistant of Federal Affairs for the Workforce Investment Board

---

3.    This phrasing is used in the version of the statute as amended in 2003, which
      reflects some minor changes in the official translation of the quoted passage.

CIVIL NO. 01-1576 (JP)          -4-

("WIB").[4]   Calderón, Rivera, and González are members of Puerto Rico's Popular Democratic Party ("PDP").   Plaintiff alleges that after Calderón took office, Plaintiff was subjected to harassment and political discrimination on the basis of her membership in the New Progressive Party ("NPP").   In March 2001, Santana was dismissed from her position as Executive Director of the HRODC, by means of a letter signed by the Governor, Defendant Calderón.

Plaintiff filed her complaint on May 7, 2001, and filed a second amended complaint on December 17, 2001.   On December 21, 2001, Defendants Calderón, Rivera, and González filed a motion to dismiss. On February 15, 2002, the Court granted in part and denied in part Defendants' motion to dismiss (No. 64).   The Court dismissed Plaintiff's First Amendment political discrimination claims brought against Calderón, Rivera, and González in their individual capacities on the grounds of qualified immunity.[5]   The Court denied Defendants' qualified immunity argument on Plaintiff's Fourteenth Amendment due process claims.   Defendants filed an interlocutory appeal challenging the denial of their qualified immunity defense to Plaintiff's due process claim.   The First Circuit Court of Appeals reversed, and held

---

4.   The WIB is a planning board that each state is required to create in order to be eligible to participate in the WIA.  29 U.S.C. § 2821.

5.   Defendants Calderón and Rivera were sued in their official capacities as well as in their individual capacities.  The defense of qualified immunity applies only to claims against a defendant in his or her individual capacity.  Santana v. Calderón, 342 F.3d 18, 20 (1st Cir. 2003) (citing Brandon v. Holt, 469 U.S. 464, 472-473 (1985)).

CIVIL NO. 01-1576 (JP)          -5-

that Defendants were entitled to qualified immunity as a defense to the due process claims against them.  <u>Santana</u>, 342 F.3d at 31.

In its Opinion addressing the interlocutory appeal, the Court of Appeals explained that qualified immunity is available as a defense to Plaintiff's due process claims against Defendants in their individual capacities because, at the time of Santana's dismissal, it was not clear whether Plaintiff held a property interest in her continued employment as Executive Director of the HRODC.  <u>Id.</u>  The First Circuit reasoned that Plaintiff would not possess such a property right if her position was one which was subject to termination at will by the Governor.  However, whether or not the Governor possesses such a removal power is a question of Puerto Rico Constitutional law that could only be determined by the Supreme Court of Puerto Rico.

Reasoning by analogy to federal Supreme Court precedent regarding the power of the President of the United States to remove certain officials, the First Circuit stated:

> These Supreme Court cases suggest that the question of the Governor's power to remove the Executive Director at will distills to (a) whether the Executive Director of the HRODC is a purely executive position that (b) entails policymaking or administrative authority such that (c) the Governor's obligation to execute the laws would be hindered by her inability to control the occupant of the position.

<u>Id.</u> at 28.  Because a clear answer to the property right issue would have to come from the Supreme Court of Puerto Rico, the First Circuit went on to state that:

CIVIL NO. 01-1576 (JP)          -6-

> . . . we urge the district court, as it proceeds with the
> suit for injunctive relief and the other claims against
> the defendants, to consult with the parties about the
> appropriateness of certifying to the Puerto Rico Supreme
> Court the Commonwealth constitutional issue relating to
> the removal power of the Governor.

Id. at 31.  Accordingly, the Court certified the following question

to the Supreme Court of Puerto Rico: "Does the Governor of Puerto

Rico have the authority under the Constitution of Puerto Rico to

remove the Executive Director of the Human Resources and Occupational

Development Council?"

The Supreme Court of Puerto Rico issued a comprehensive Opinion

in which it explained, *inter alia*, that because the Executive

Director of the HRODC,

> . . . is a government functionary that exercises strictly
> executive functions, participates in the formulation and
> implementation of the Puerto Rico government's public
> policy in areas of seminal importance, . . . [the
> Executive Director] can be freely removed by the Governor.

P.R. Sup. Ct. Op. at 47 (No. 123).  The Opinion also stated that the

planned four year term for the Executive Director is "merely a

directive one.   That term does not establish a mandatory time

period . . . and therefore does not confer . . . a proprietary

interest."  P.R. Sup. Ct. Op. at 46 (No. 123).

In light of the Opinion issued by the Supreme Court of Puerto

Rico, we shall now revisit some of the issues previously considered

in our prior Opinion and Order (No. 64).  In particular, the Court

will reassess Defendants' arguments for dismissal of Plaintiff's

First Amendment political discrimination claims and Fourteenth

CIVIL NO. 01-1576 (JP)          -7-

Amendment due process claims against Defendants Calderón and Rivera in their official capacities.

## II.   <u>LEGAL STANDARD FOR A MOTION TO DISMISS</u>

According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1969 (2007). As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. <u>Id.</u> at 1974. The First Circuit has interpreted <u>Twombly</u> as sounding the death knell for the oft-quoted language of <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Rodríguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 94-95 (1st Cir. 2007), quoting <u>Twombly</u>, 127 S. Ct. at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." <u>Rumford Pharmacy, Inc. v. City of East Providence</u>, 970 F.2d 996, 997 (1st Cir. 1992).

## III.   <u>ANALYSIS</u>

### A.   <u>Fourteenth Amendment Due Process Claims</u>

Plaintiff's second amended complaint alleged due process claims under two theories: (1) deprivation of a property interest without

CIVIL NO. 01-1576 (JP)          -8-

due process; and (2) deprivation of a liberty interest without due process.  At this stage, the due process property interest claims have been dismissed against Defendants Calderón, Rivera, and González in their individual capacities, but remain before the Court as to Defendants Calderón and Rivera in their official capacities.[6]  The due process liberty interest claims also remain before the Court. For the reasons explained in this section, the Court will now dismiss the remaining property interest claims against the official capacity Defendants, as well as the liberty interest claims against all Defendants.

### 1.   **Due Process – Property Interest**

Plaintiffs due process claims alleging deprivation of a property interest are before the Court as brought against Defendants Calderón and Rivera in their official capacities as Governor of Puerto Rico and Secretary of Labor and Human Resources of Puerto Rico, respectively.  In their motion to dismiss the second amended complaint (No. 45), Defendants argued that Santana could not state a Fourteenth Amendment due process claim stemming from her dismissal from employment because she had no established property interest in her employment.

Under the Fourteenth Amendment, a state is prohibited from discharging a public employee who possesses a property interest in

---

6.   The second amended complaint does not name Defendants González or Muñiz in their official capacities.  We separately address, in section D below, the individual capacity claims against Defendant Muñiz, who filed a motion to dismiss after the other Defendants' motion.

CIVIL NO. 01-1576 (JP)          -9-

continued employment without due process of law. Santana, 342 F.3d at 23 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)).   In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that she has a legally recognized expectation that she will retain her position. Id. at 24.  A legitimate expectation of employment, giving rise to a property interest, is determined by the employment contract or by state law.   Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 15 (1st Cir. 1996).

Based on an analysis of the statute creating the position of Executive Director of the HRODC, the Court previously determined that Santana did have a property interest in her employment.   In particular, the Court emphasized that the enabling statute provided that the Executive Director shall hold office "for a term of four (4) years and until his/her successor has been appointed and takes office."  P.R. Laws Ann. tit. 18, § 1584.  Finding that Santana had a legitimate expectation of continued employment for a four year term, the Court denied Defendants' motion to dismiss Santana's due process claims as against the Defendants in their official capacities.

The First Circuit subsequently held that the question of the existence of a property interest in Plaintiff's employment was not clearly established under Puerto Rico law.  The First Circuit found that the enabling statute was not as clear cut as the Court

CIVIL NO. 01-1576 (JP)            -10-

understood it to be, and that the existence of a property right also depended upon the unsettled question of the Governor's removal power under Puerto Rico constitutional law.  Therefore, as discussed above, the Court certified the question to the Supreme Court of Puerto Rico.

The Opinion from the Supreme Court of Puerto Rico establishes clearly that the Governor does have the power to remove the Executive Director of the HRODC at will, that Santana did not have a legally recognized expectation of continued employment for the full four year term, and that Santana did not have a property interest in her employment.  In the absence of such a property interest, Plaintiff may not state a claim for violation of her due process rights under the Fourteenth Amendment.  Cleveland Bd. of Educ., 470 U.S. at 538; Santana, 342 F.3d at 23.   Therefore, the Court will dismiss Plaintiff's remaining Fourteenth Amendment due process claims alleging a deprivation of Plaintiff's property interest, which are against Defendants Calderón and Rivera in their official capacities.

## 2.   Due Process – Liberty Interest

In addition to alleging that Defendants denied Plaintiff due process by removing her property interest in continued employment, Plaintiff's second amended complaint also alleged a separate theory of a due process violation based upon deprivation of a liberty interest.   In this Court's prior Opinion (No. 64) addressing Defendants' motion to dismiss, we refrained from analyzing Defendants' arguments for dismissal of Plaintiff's due process claim

CIVIL NO. 01-1576 (JP)          -11-

based on the theory of deprivation of a liberty interest.  Because
we found at the time that a property interest existed, the Court held
that the due process claims would not be dismissed and that therefore
there was no need to separately consider the liberty interest
allegations at that stage of the litigation.  In the absence of a
determination from the Court on the liberty interest question, the
issue was not addressed by the First Circuit on interlocutory appeal.

     Now that the Opinion of the Puerto Rico Supreme Court has
established that Plaintiff did not possess a property interest, and
the theory of a due process violation based upon such a property
interest has been rejected, it is appropriate for the Court to
consider Plaintiff's due process allegations based upon an alleged
liberty interest.  Plaintiff's claim for deprivation of a liberty
interest without due process is based upon the allegation that
Defendants, and in particular Defendant Rivera, made false and
defamatory statements to the press regarding the reasons for
Plaintiff's dismissal from her position as Executive Director.
Plaintiff alleges that she was unconstitutionally denied an
opportunity for a hearing to clear her name.  Defendants move to
dismiss the due process liberty interest claim, arguing that
Plaintiff's complaint lacks adequate specificity in its allegations
as to said claim.

     Even where an employee has no property interest in continued
employment, there are nonetheless certain limited circumstances under

CIVIL NO. 01-1576 (JP)          -12-

which a public employer's termination of an employee, combined with

the dissemination of defamatory statements regarding the reason for

the discharge, may impact the employee's constitutionally protected

liberty interests.   Burton v. Town of Littleton, 426 F.3d 9, 15

(1st Cir. 2005).

> Although neither the termination of employment nor
> statements that might be characterized as defamatory are,
> by themselves, sufficient to implicate the liberty
> interest, where a public-sector employer creates and
> disseminates a false and defamatory impression about an
> employee in connection with the employee's discharge, the
> Due Process Clause require[s] the employer to provide the
> employee with an opportunity to dispute the defamatory
> allegations, and the employer's failure to do so is
> actionable under § 1983.

Id. at 14-15 (internal quotations omitted).

In Plaintiff's second amended complaint, she alleges that on the

day of Santana's dismissal from her position as Executive Director,

Defendant Rivera made several defamatory statements to the press

regarding the reasons for Santana's dismissal.   Specifically, the

complaint alleges that Rivera's statements to the press asserted that

Santana had failed to obey orders from the Secretary of Labor by:

> (i) hiring three people without authorization; (ii) taking
> a business trip to California without authorization; (iii)
> announcing a reorganization of the Classification Plan
> without authorization; (iv) purchasing equipment without
> authorization; and (v) incorrectly returning $1,476,070.81
> of Title III federal funds to the federal government.

(second am. compl. ¶ 4.32) The second amended complaint further

alleges that Rivera made additional assertions that Santana had:

> . . . purchased four paper shredder machines and had spent
> the prior weekend destroying documents . . . transferred

CIVIL NO. 01-1576 (JP)          -13-

> two vehicles assigned to her office to a municipal
> consortium . . . leased a 4x4 automobile without
> authorization.

(second am. compl. ¶ 4.34.)  Plaintiff alleges that each of these

assertions were either entirely false, or mischaracterizations of

actions which she had carried out with approval from the Secretary

of Labor.

In order for Santana to state a claim for deprivation of a

liberty interest without due process, she must satisfy five elements:

> First, the alleged statements must level a charge against
> [the employee] that might seriously damage his standing
> and associations in his community and place his good name,
> reputation, honor, or integrity . . . at stake . . .
> Second, the employee must dispute the charges made against
> him as false. Third, the stigmatizing statements or
> charges must have been intentionally publicized by the
> government. That is, the defamatory charges must have been
> aired in a formal setting (and not merely the result of
> unauthorized 'leaks'). Fourth, the stigmatizing statements
> must have been made in conjunction with an alteration of
> the employee's legal status, such as the termination of
> his employment. Finally, the government must have failed
> to comply with the employee's request for an adequate
> name-clearing opportunity.

Burton, 426 F.3d at 15.

With regard to the first element, the alleged statements by

Rivera[7] directly question Plaintiff's reputation and integrity by

---

7.  The second amended complaint only alleges that defamatory statements were made
    and disseminated to the public by Defendant Rivera. Although Defendant
    Calderón is alleged to have written the termination letter in which assertions
    similar to those made by Rivera were given as the basis for Santana's
    dismissal, said letter cannot support a due process liberty interest claim
    because Calderón did not publicly disseminate the letter. Wojcik v. Mass State
    Lottery Comm'n, 300 F.3d 92, 104 (1st Cir. 2002); Silva v. Worden,
    130 F.3d 26, 33 (1st Cir. 1997) (defendant "must also be responsible for the
    dissemination of defamatory charges, in a formal setting (and not merely as the
    result of unauthorized 'leaks')").  The complaint does not include specific
    allegations as to defamatory statements made by Defendants González or Muñiz.
    Therefore, the Court's analysis in this section will focus on Defendant Rivera.

CIVIL NO. 01-1576 (JP)          -14-

asserting that she disobeyed orders, committed serious errors to the detriment of her organization (such as incorrectly returning over one million dollars in federal funding), and abused her position for personal gain by arranging unauthorized perks including travel and use of an automobile.  With regard to the second element, Plaintiff alleges that she contested the false statements by distributing a press release on March 11, 2001, two days after her dismissal, in which she refuted the assertions made by Rivera regarding the reasons for her dismissal.

With regard to the third element, Plaintiff alleges that Defendant Rivera made the statements directly to the press, and that as a result there was significant news coverage of Rivera's assertions on March 10, 2001.  As to the fourth element, Plaintiff alleges that Rivera's defamatory statements were made on the day of her termination, and thus were made in conjunction with the alteration of her status.

With regard to the fifth element, Plaintiff does not specifically allege in her complaint that she requested a name-clearing opportunity from her former employer.  Although Plaintiff's complaint alleges that Santana "was never given the opportunity to be heard by Defendants or defend herself from the alleged reasons for her termination," the complaint does not indicate whether she ever requested such a hearing.  (second am. compl. ¶ 4.35.)  The law in the First Circuit is clear that the fifth element,

CIVIL NO. 01-1576 (JP)          -15-

the plaintiff's unsuccessful request for a name-clearing hearing, is mandatory. <u>Burton</u>, 426 F.3d at 15 ("the government must have failed to comply with the employee's request for an adequate name-clearing opportunity") (citing <u>Wojcik</u>, 300 F.3d at 103).

The only allegations in the second amended complaint that might possibly refer to a request for a name-clearing opportunity are: (1) Santana's request on the day of her termination, March 9, 2001, for a meeting with her staff; and (2) the March 1, 2001 letter that Santana sent to Defendant Rivera. The request for a meeting with her staff does not suffice because said request was granted, and because the allegations in the complaint indicate that Santana only requested to meet with her employees, not with Defendants in order to confront the accusations against her in a public setting.

With regard to the March 1, 2001 letter to Rivera, the complaint alleges that the letter was "regarding the pattern of discrimination and harassment she and her employees were being subjected to." (second amended compl. ¶ 4.24.) However, Plaintiff does not allege that in the letter she requested hearing to clear her name of the assertions leveled by Rivera in his statements to the press. Moreover, Rivera's statements to the press did not occur until eight days after the letter, on the day of Santana's termination, March 9, 2001.[8]

---

8.    Although the First Circuit has not had the occasion to delve into a detailed discussion of what exactly constitutes an adequate request for a name-clearing hearing, other Circuits that have faced the question have demanded an unambiguous request from the plaintiff that seeks to directly challenge the

CIVIL NO. 01-1576 (JP)              -16-

     Because Plaintiff has not adequately alleged that she requested
and was denied a hearing to clear her name of the allegedly
defamatory statements made by Rivera, she fails to satisfy the final
element for a claim of deprivation of a due process liberty interest.
In addition, Plaintiff's complaint fails to allege dissemination of
defamatory statements by any Defendants other than Rivera.
Accordingly, we shall dismiss Plaintiff's claims for deprivation of
a constitutionally protected liberty interest without due process as
against all Defendants.

     **B.   First Amendment Political Discrimination Claims**

     In the second amended complaint, Plaintiff alleged that the
termination of her employment violated First Amendment prohibitions
against political discrimination.   On the basis of qualified
immunity, said claims have been dismissed as against Defendants
Calderón, Rivera, and González in their individual capacities.
However, because qualified immunity is not available to a defendant
in her official capacity, the political discrimination claims as
against Calderón and Rivera in their official capacities remain
before the Court.  Santana, 342 F.3d at 20.  Defendants moved to
dismiss said claims, and the Court denied the motion to dismiss.  The

_____

          allegedly defamatory statements.    See, e.g.,   Quinn v. Shirey,
          293 F.3d 315, 325 (6th Cir. 2002) ("Even were we to agree with Plaintiff that
          . . . he did not have to use the exact words 'name-clearing hearing,' in order
          for his claim to survive, his request still would have had to sufficiently
          apprise Defendants of his desire for a hearing to clear his name *following the
          dissemination of the statements*." (internal quotations omitted) (emphasis
          added)).

CIVIL NO. 01-1576 (JP)          -17-

subsequent Opinion by the Supreme Court of Puerto Rico in response to the question certified by this Court sheds new light on our analysis of Plaintiff's political discrimination claims. Therefore, we shall now reassess said claims.

In accordance with precedent from the United States Supreme Court, the First Circuit applies the following standard when assessing a First Amendment political discrimination claim:

> In political discrimination cases, plaintiffs must first establish that party affiliation was a substantial or motivating factor behind the adverse employment action. *See* Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977). Defendants then carry the burden to establish either a nondiscriminatory reason for the challenged action, *see id.* at 287, 97 S.Ct. 568, or that plaintiff held a "political position," for which party affiliation constitutes "an appropriate requirement for the effective performance of the public office involved," Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed. 2d 574 (1980). *See* Ortiz-Piñero, 84 F.3d at 12. Unlike non-policymaking career positions, "political positions" are terminable without cause when political affiliation is an appropriate requirement for the position. *See, e.g.,* Elrod v. Burns, 427 U.S. 347, 362-63, 96 S.Ct. 2673, 49 L.Ed. 2d 547 (1976); Galloza v. Foy, 389 F.3d 26, 28-29 (1st Cir. 2004). This rule ensures that "representative government [will] not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." Elrod, 427 U.S. at 367, 96 S.Ct. 2673.
>
> In determining whether a position is "political," we engage in a two-step inquiry: (1) whether the governmental unit decides "issues where there is room for political disagreement on goals or their implementation," and (2) whether the position's responsibilities "resemble[] [those of] a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." Jiménez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. 1986)

CIVIL NO. 01-1576 (JP)          -18-

> (en banc); *see also* <u>Galloza</u>, 389 F.3d at 29-30;
> <u>Duriex-Gauthier v. López-Nieves</u>, 274 F.3d 4, 9
> (1st Cir. 2001).

<u>Ruiz-Casillas v. Camacho-Morales</u>, 415 F.3d 127, 132 (1st Cir. 2005).

In our previous Opinion and Order (No. 64), the Court proceeded through the analysis described above, and made the following findings: (1) Plaintiff's initial *prima facie* showing that party affiliation was a substantial or motivating factor behind her termination was deemed established because Defendants conceded that this was the case, and argued only that the political discrimination claim should fail because Santana's position was a political one; (2) the first prong of the test for establishing that a position is political was satisfied because the HRODC's powers, including allocating a budget of over $300 million, required the governmental unit to decide issues where there is room for political disagreement on goals or their implementation; and (3) the second prong of the test for establishing that a position is political was not satisfied because, although the position of Executive Director may include some modicum of policy making responsibilities, a full analysis of the relevant factors led to the conclusion that the Executive Director's responsibilities did not resemble those of a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement. Because the Court found that Defendants were unable to satisfy the second prong of the test for establishing

CIVIL NO. 01-1576 (JP)          -19-

that a position is a political one, the Court denied Defendants' motion to dismiss the First Amendment political discrimination claims against the Defendants in their official capacities.

The Court's view with regard to the first two conclusions listed above remains unchanged in light of the First Circuit's Opinion on interlocutory appeal, and the Opinion of the Supreme Court of Puerto Rico in response to our certified question.  Without repeating our prior discussion of these issues, the Court maintains the findings that the HRODC has the power to decide issues where there is room for political disagreement on goals or their implementation, and that Plaintiff has established through Defendants' concession of the point that her removal was motivated by political affiliation.

However, the Court revises its findings with regard to the second prong of the test for establishing that a position is political: whether the Executive Director's responsibilities resemble those of a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement.  The guidance provided by the First Circuit and the Supreme Court or Puerto Rico lead the Court to now conclude that this second prong is satisfied, and that therefore Defendants may avail themselves of the so-called <u>Branti-Elrod</u> defense.[9]

---

9.    The <u>Branti-Elrod</u> defense refers to the Defendant's showing that the position from which the plaintiff was discharged was a "political position," and therefore terminable by the government employer without cause.

CIVIL NO. 01-1576 (JP)          -20-

Although not directly making a finding on this issue in the context of Plaintiff's political discrimination claim,[10] the First Circuit stated that, "[r]espectfully, the district court's various conclusions concerning the extent to which the position of Executive Director is a policymaking position point in different directions." Santana, 342 F.3d at 28.  We therefore now carefully reexamine those conclusions in light of the Opinion of the Supreme Court of Puerto Rico.  The applicable inquiry is as follows:

> In determining the second prong, we examine the position's "inherent attributes," for which the job description is the most useful starting point. Galloza, 389 F.3d at 31.  Job descriptions that are broad or open ended--given the employee's latitude to exercise discretionary judgment--generally indicate a policymaking position, while job descriptions that are narrowly circumscribed inhibit freedom of action and generally indicate a non-policymaking position. Id. The job title, however, is not necessarily dispositive in the inquiry, Duriex-Gauthier, 274 F.3d at 8.  Instead, we examine other indicia including "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, . . . responsiveness to partisan politics and political leaders . . . [and] responsibilities that are not well defined or are of broad scope." Jiménez Fuentes, 807 F.2d at 242 (internal quotation marks omitted).

Ruiz-Casillas, 415 F.3d at 132.

Starting with the job description, the statute that establishes the position of Executive Director of the HRODC provides "[t]he

---

10.    The First Circuit was not presented with the question of the appropriateness of the Court's denial of Defendants' motion to dismiss Plaintiff's political discrimination claims against Defendants in their official capacities.  The interlocutory appeal focuses instead on the issue of qualified immunity, specifically the Court's denial of qualified immunity for Defendants with regard to the individual capacity due process claims.

CIVIL NO. 01-1576 (JP)            -21-

Governor shall appoint an Executive Director, with the advice and approval of the Senate, . . . who shall direct the administrative and operational work of the Council." P.R. Laws Ann. tit. 18, § 1584.[11] This description is relatively broad and open-ended. It describes the Executive Director's role in broad strokes, rather than providing specific details to carefully circumscribe the job responsibilities. The broad job description is a factor that weighs in favor of finding that the Executive Director is a policymaking position. Ruiz-Casillas, 415 F.3d at 132.

     The job description alone is not determinative, and we must proceed to examine other inherent attributes of the Executive Director position. Relative pay is one of the factors we may consider. The Governor sets the salary for the Executive Director of the HRODC, and Santana's salary while holding the position was set at $65,000.00 annually. Relative to other government officials at the time of Santana's appointment, this salary is not so high as to strongly indicate that Santana's role was necessarily considered an important policy-making position, but is also substantial enough to be consistent with the possibility that the Governor viewed the Santana as a significant policymaker. The Court considers the factor of relative pay to be neutral to our analysis.

---

11. Official translation based on most recent amendments in 2003. The quoted passage has not been materially amended from its form at the time that Santana took office.

CIVIL NO. 01-1576 (JP)          -22-

With regard to the factor of technical competence,[12] Santana's position required her to administer a large budget, a responsibility for which she possessed particular competence as a result of her prior experience working in the Puerto Rico Department of Education, where in 1995 she oversaw a budget as high as $600 million.  The fact that the Executive Director position required special competence in the administration of a major budget, and that Santana possessed the requisite abilities, tends to show that her responsibilities were policymaking in nature.

Santana's broad authority to administer the HRODC budget is also relevant to the additional factors of power to control others, and influence on programs.  As noted by the First Circuit in its Opinion on interlocutory appeal:

---

12.    There appears to be some inconsistency in the case law within the First Circuit regarding the appropriate method for weighing the factor of technical competence.  In some cases, courts have held that a high level of technical competence indicates that the position is that of a policymaker because the successful implementation of the political administration's policy goals will depend heavily on the employee's technical abilities.  <u>Ruiz-Casillas</u> 415 F.3d at 133; <u>Jiménez Fuentes v. Torres Gaztambide</u>, 807 F.2d 236, 245 (1st Cir. 1986) (citing with approval the reasoning in <u>Tomczak v. City of Chicago</u>, 765 F.2d 633 (7th Cir. 1985), which found that a position was political because, among other factors, the employee's "duties . . . required something substantially more than simple ministerial competence").

By contrast, in other cases courts have reasoned that a low level of technical competence indicates that the position is policymaking in nature because if the individual was not hired on the basis of his particular technical abilities, then he was more likely hired on the basis of some other characteristic, such as his political affiliation.  <u>Ortiz-Piñero</u>, 84 F.3d at 14 ("the evidence does not support a fair inference that Ortiz was selected for his managerial or technical expertise . . . [but rather] . . . Ortiz's prominent PDP affiliation . . . permits a fair inference that he was selected . . . based on his 'political' service and talents").

The Court will follow the most recent First Circuit opinion on the issue, <u>Ruiz-Casillas</u>, and consider a high degree of technical competence a factor that cuts in favor of finding that a position is that of a policymaker.

CIVIL NO. 01-1576 (JP)          -23-

> . . . the control over allocation of substantial federal
> funds and the power to review the regional board's
> proposals for workplace investment involve policymaking on
> issues of fundamental concern to the Governor: economic
> development, job creation and job training.

Santana, 342 F.3d at 29.  The scope of the Executive Director's

authority thus weighs in favor of a finding that Santana's position

was that of a policymaker.

Other factors that courts may consider in assessing the second

prong of the Branti-Elrod defense include contact with elected

officials, and responsiveness to partisan politics and political

leaders.  With regard to these factors, the finding of the Supreme

Court of Puerto Rico that the Executive Directory may be removed at

will by the Governor is relevant.  In its Opinion issued in response

to the question certified by this Court, the Supreme Court of Puerto

Rico found that "the Executive Director of the Occupational

Development Council . . . can be freely removed by the Governor."

P.R. Sup. Ct. Op. at 47 (No. 123).  The Governor's power of removal

creates a situation in which the Executive Director's continuity in

office depends upon responsiveness to the political administration,

and in particular to the Governor herself.  Thus these factors also

tend to indicate that the Executive Director is a policymaking

position.

Taken as a whole, and in light of the guidance from the First

Circuit and the Supreme Court of Puerto Rico, the Court finds that

the relevant factors support a determination that the second prong

CIVIL NO. 01-1576 (JP)          -24-

of the <u>Branti-Elrod</u> defense is satisfied in this case.  The inherent
attributes of the job show that the Executive Director's
responsibilities resemble those of a policymaker, a privy to
confidential information, a communicator, or some other office holder
whose function is such that party affiliation is an equally
appropriate requirement.  Because this is the case, and because the
HRODC is a governmental unit that decides issues where there is room
for political disagreement on goals or their implementation, we may
properly conclude that Santana held a political position, for which
party affiliation constitutes an appropriate requirement for the
effective performance of the public office involved.  Accordingly,
the Court will dismiss Plaintiff's remaining claims for political
discrimination in violation of the First Amendment, which are against
Defendants Calderón and Rivera in their official capacities.

> ### C.   <u>Conspiracy Claim Brought Pursuant to Section 1983</u>

In the Court's Opinion (No. 64) addressing Defendants' motion
to dismiss, we denied the motion to dismiss Plaintiff's Section 1983
conspiracy claim.  At the time, we held that Plaintiff adequately
pled a claim that Defendants had conspired to deprive Santana of her
constitutional rights by removing her from her position as Executive
Director on the basis of her political affiliation.

Subsequently, the Opinion of the Supreme Court of Puerto Rico
in response to our certified question found that Santana did not
possess a property right in her position as Executive Director of the

CIVIL NO. 01-1576 (JP)          -25-

HRODC, and that the Governor has the power to remove the Executive Director at will.  As discussed above, in light of said Opinion, the Court now concludes that there was no deprivation of Santana's constitutional rights of due process under either a property right or liberty right theory, or of her right to be protected from political discrimination.

Because the actions that Defendants are alleged to have conspired to carry out were in fact not prohibited, there is no underlying violation, or even planned violation, to support a conspiracy theory.  Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) ("for a conspiracy to be actionable under section 1983 the plaintiff has to prove that there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws") (internal quotations omitted). Accordingly, the Court will dismiss Plaintiff's Section 1983 conspiracy claim.

D.   **Defendant Ralph Muñiz's Motion to Dismiss**

Plaintiff's second amended complaint names Muñiz as a Defendant in his individual capacity.  Because Muñiz is a federal employee, Plaintiff's claims against said Defendant are brought pursuant to the Bivens doctrine.  Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Much like the way that Section 1983 creates a private cause of action against individuals that violate constitutional rights while acting under color of state

CIVIL NO. 01-1576 (JP)          -26-

law, <u>Bivens</u> permits a private cause of action against federal officials who violate constitutional rights.

Muñiz has filed a motion to dismiss (No. 108) the First Amendment political discrimination and Fifth Amendment due process claims against him, arguing that he is entitled to qualified immunity.[13]   <u>Bivens</u> claims are subject to the same limits of liability on the basis of qualified immunity as a Section 1983 action.   <u>Butz v. Economou</u>, 438 U.S. 478, 503 (1978) (holding that it is "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials").

The decisions of the Court (No. 64), and of the First Circuit, <u>Santana</u> 342 F.3d at 31, have determined that in the instant case, qualified immunity is an appropriate defense to Santana's claims against the individual capacity Defendants to enforce her constitutional rights of due process and protection from political discrimination.   Although these decisions pertained to Santana's claims brought pursuant to Section 1983, the analysis is the same in

---

13.   Plaintiff subsequently filed a motion to strike (**No. 113**) Defendant Muñiz's motion to dismiss, arguing that the motion to dismiss was untimely filed. Defendant Muñiz opposed (No. 114) the motion to strike, arguing that he raised an affirmative defense of qualified immunity early in the litigation, and has pursued said defense at several other points prior to his most recent motion to dismiss.   In light of the unusual procedural path that the instant case has taken, and in an effort to decide issues on the merits rather than on technicalities, the Court will fully consider Defendant Muñiz's motion to dismiss, and hereby **DENIES** Plaintiff's motion to strike.   See Fed R. Civ. P. 6(b) (court may extend time for good cause); <u>Moron-Baradas v. Dept. of Educ. of Com. of Puerto Rico</u>, 488 F.3d 472, 478 (1st Cir. 2007) ("The administration of filing deadlines is a matter of case management that comes within the district court's discretion.") (internal citation ommitted).

CIVIL NO. 01-1576 (JP)          -27-

the context of a <u>Bivens</u> claim brought to enforce the same rights against a federal official. <u>Butz</u>, 438 U.S. at 503. Therefore, the Court will grant Defendant Muñiz's motion to dismiss the First and Fifth Amendment claims against him.

**IV.   <u>CONCLUSION</u>**

In conclusion, the Court shall dismiss the First Amendment political discrimination and Fourteenth Amendment due process property interest claims against Defendants Calderón and Rivera in their official capacities. The Court shall also dismiss the Fourteenth Amendment due process liberty interest claim, and the Section 1983 conspiracy claim, as against all Defendants. Finally, Court shall dismiss the First and Fifth Amendment claims against Defendant Muñiz.

Remaining before the Court are Plaintiff's claim under the Consolidated Omnibus Reconciliation Act (COBRA), as well as Plaintiff's claims brought pursuant to Puerto Rico law. A separate Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of March, 2009.

s/Jaime Pieras, Jr.
JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE
